# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **WENDY CHISHOLM** | **CIVIL ACTION** |
| **VERSUS** | |
| **THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA** | **NO.: 18-00728-BAJ-RLB** |

## <u>RULING AND ORDER</u>

Before the Court are cross-motions for summary judgment filed by Defendant, The Guardian Life Insurance Company of America ("Defendant" or "Guardian"), and Plaintiff, Wendy Chisholm ("Plaintiff" or "Chisholm"). Both Defendant's **Motion for Summary Judgment, (Doc. 20),**[1] and Plaintiff's **Motion for Summary Judgment, (Doc. 22)**,[2] request that the Court grant summary judgment pursuant to Federal Rule of Civil Procedure 56 regarding Defendant's decision to deny Plaintiff long term disability benefits. Oral argument is not necessary. For the reasons stated herein, Defendant's **Motion for Summary Judgment, (Doc. 20), is GRANTED IN PART and DENIED IN PART**, and Plaintiff's **Motion for Summary Judgment, (Doc. 22), is DENIED**.

## I.    BACKGROUND

Plaintiff was an employee of Delta Career Education Corporation ("Delta"), which sponsored an employee welfare benefit plan which included a group disability benefits policy, funded and administered by Defendant and governed by the

---

[1] Plaintiff opposes Defendant's motion.  (Doc. 26).

[2] Defendant opposes Plaintiff's motion, (Doc. 32), and Plaintiff replied.  (Doc. 33).

Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1991, *et seq.* ("ERISA"). (Doc. 1, at ¶¶ 8, 9, 16). Since January 17, 2008, Plaintiff worked for Delta as a Medical Assistant. (Doc. 1, at ¶ 16). In 2009, Plaintiff was diagnosed with Dercum's disease, a painful disease that causes multiple tumors to grow on and impinge upon peripheral nerve endings. (Doc. 22–1, at p. 8).

Plaintiff became disabled on May 7, 2009 and applied for and was granted short term disability benefits. (Doc. 1, at ¶¶ 19-21). Plaintiff then sought long term disability benefits ("LTD") from Defendant, which Defendant approved and paid under the Plan's 24-month "own occupation" provision. On September 19, 2016, Defendant advised Plaintiff that LTD benefits would cease on October 4, 2016, because Defendant's ongoing review revealed that Plaintiff was capable of full-time sedentary work. (Doc. 1, at ¶¶ 22-23). Plaintiff appealed Defendant's decision to deny LTD benefits, and Defendant informed Plaintiff on January 5, 2018 that she would no longer receive LTD benefits because the medical evidence did not support functional limitations or restrictions that would prevent Plaintiff from performing the major duties of any gainful work on a full-time basis. (Doc. 1, at ¶ 36).

A.    **The Disability Plan**

Defendant issued Group Plan No. G-00351631-HC ("the Plan"), of which Delta was a participating employer. (Doc. 16-1, at pp. 1-312). The relevant part of the Plan provides:

**Schedule of Benefits**

*Own Occupation Period*

The first 24 months of benefit payments from this plan.

**When Benefits End**

**When Payments End**: A covered person's benefits from this *plan* will end on the earliest of the dates shown below:

(a) The date he or she is no longer *disabled*.

(b) The date he or she earns, or is able to earn, the maximum earnings allowed while *disabled* under this *plan*.

(c) The date he or she is able to perform the major duties of his or her *own occupation* on a full-time basis with reasonable accommodation that an employer is willing to provide.

(Doc. 16-1, at pp. 167, 227). The Definitions Section of the Plan provides in relevant

part as follows:

**Disability or Disabled**: These terms mean a covered person has physical, mental or emotional limits caused by a current *sickness* or *injury*. And, due to these limits, he or she is not able to perform the major duties of his or her *own occupation* or any *gainful work* as shown below:

(1) During the *elimination period* and the *own occupation* period, he or she is not able to perform, on a full-time basis, the major duties of his or her *own occupation*.

(2) After the end of the *own occupation* period, he or she is not able to perform, on a full-time basis, the major duties of any *gainful work*.

**Gainful Occupation or Gainful Work**: Work for which a covered person is, or may become, qualified by: (a) training; (b) education; or (c) experience. When a covered person is able to perform such work on a full-time basis, he or she can be expected to earn at least 60% of his or her indexed *insured earnings,* within 12 months of returning to work.

(Doc. 16-1, at pp. 247-248).

**B.      Plaintiff's Claim and Defendant's Denial of LTD Benefits**

Plaintiff was diagnosed with Dercum's disease in 2009, and her last day of work was May 6, 2009.  Defendant received Plaintiff's claim for LTD benefits on May 15, 2009.  (Doc. 16-7, at p. 222).

Dr. Brown-Manning stated in a claim form that Plaintiff was unable to work and that a release to return to work was pending a specialist evaluation.  (Doc. 16-7, at pp. 177-182).  LTD benefits were approved beginning August 5, 2009.  (Doc. 16-7, at p. 138).

On December 17, 2009, Dr. Cavell, an internal medicine specialist, advised Defendant in an Ongoing Physician's Statement of Disability ("OPSD") that Plaintiff suffered from multiple sites of pain and was being treated with analgesics, antidepressants and surgical incision of nodules.  (Doc. 16-7, at pp. 100-101).  Her condition was diagnosed as "retrogressed", with a "poor" prognosis, and a Class 5 Physical Limitation assignment.  (*Id.* at p. 101).  Dr. Cavell anticipated that Plaintiff would never be released to work.  (*Id.*).  In an OPSD issued in August 2010, Dr. Cavell confirmed the prognosis.  (Doc. 16-6, at p. 152).

On October 29, 2010, Plaintiff was awarded Social Security Disability benefits ("SSD").  (Doc. 16-6, at pp. 154-155).  The Social Security Administration ("SSA") notified Plaintiff that she became disabled on May 5, 2009, and the award of disability was "totally favorable".  (*Id.*).  Defendant received an SSA Notice of Award on

December 9, 2010 that found that Plaintiff became disabled on May 5, 2009 and was entitled to benefits beginning November 2009. (Doc. 20-1, at p. 5).

On April 21, 2011, Dr. Cavell completed a Physical Capabilities Evaluation ("PCE") that indicated that Plaintiff was capable of sedentary work. (Doc. 16-6, at p. 110). Plaintiff was also capable of lifting/carrying and pushing/pulling up to five pounds frequently and up to ten pounds occasionally. (*Id.*, at p. 109). Dr. Cavell also noted that Plaintiff had the ability to perform simple grasping, fine manipulation and pushing/pulling arm controls with both hands but was unable to firmly grasp with either hand. (*Id.*). Plaintiff was found to be capable of operating desk machines, such as a keyboard and stapler. (*Id.*, at p. 110). In his Attending Physician's Statement ("APS") of the same date, Dr. Cavell noted that Plaintiff suffered from multiple painful tumors and was again assessed a Class 5 Physical Impairment. (Doc. 16-6, at p. 113). Interestingly, Dr. Cavell again opined that Plaintiff would never be released to work. (*Id.*).

In a PCE and an APS dated July 25, 2011, Ashley Olivier, a family nurse practitioner, explained that Plaintiff continued to suffer from "multiple painful tumors" and assessed Plaintiff with Class 5 Physical Limitations. (Doc. 16-6, at pp. 74-75). The PCE reflected that Plaintiff was capable of sitting, standing and walking for one hour each at a time and for a total of two hours during an average workday. (Doc. 16-6, at p. 72). She also opined that Plaintiff was capable of lifting/carrying and pushing/pulling up to five pounds frequently and up to ten pounds occasionally. (*Id.*). Plaintiff was not capable of firm grasping, operating desk machines, or precise

manual dexterity and was unable to work due to the permanent restrictions. (*Id*.). On the basis of this evaluation, Defendant determined that Plaintiff was functionally limited from performing gainful work on a full-time basis and continued LTD benefits. (Doc. 16-6, at p. 32).

On July 26, 2011, Defendant advised Plaintiff that the Plan's definition of "disability" changed from "Own Occupation" to any "Gainful Work", effective August 5, 2011. (Doc. 16-6, at pp. 67-68).

Plaintiff began treatments with Dr. Kevin Ingram in 2012. On January 20, 2012, Dr. Ingram completed an OPSD indicating Plaintiff suffered from multiple painful tumors and that her condition was unchanged, assessing her with a Class 5 Physical Impairment. (Doc. 16-6, at pp. 8-9). Dr. Ingram anticipated that Plaintiff would never be released to work. (*Id*.).

An April 23, 2013 OPSD reflected Plaintiff suffered from multiple painful tumors and that her condition was unchanged. She was then assessed with a Class 5 Physical Impairment. (Doc. 16-5, at pp. 115-116.) Also on April 23, 2013, Dr. Ingram completed a PCE indicating that Plaintiff was capable of sitting, standing and walking for one hour each at a time but not capable of performing these activities for any duration during an average workday. (Doc. 16-5, at pp. 119-120). Plaintiff was also not capable of working at heights, operating heavy machinery, operating desk machines, performing precise manual dexterity, exposure to marked temperature changes or dust, fumes, gases or chemicals. (*Id*.).

Dr. Ingram completed a PCE on February 18, 2015, describing similar capabilities as those included in the April 23, 2013 PCE and provided Defendant with medical records from September 16, 2013 through February 18, 2015. (Doc. 16-5, at pp. 81-101).

As a part of Defendant's ongoing review, Charlotte Broderick, a registered nurse, contacted Dr. Ingram's office and requested additional information regarding Plaintiff's condition. (Doc. 16-5, at pp. 67-78). On April 28, 2015, Dr. Ingram's office reported that Plaintiff had over 400 tumors from head to toe and that several of the tumors had been excised. (Doc. 16-5, at pp. 56-57.) Plaintiff's specific restrictions and/or limitations were "physical stress and excessive physical activity." (*Id.*).

Defendant requested that Plaintiff undergo an FCE in which Plaintiff participated on September 24, 2015, with Bruce O'Dell, a licensed occupational therapist, who, according to Defendant, concluded that Plaintiff demonstrated abilities consistent with performing sedentary work. (Doc. 16-5, at pp. 8, 5-25, 30-33).

The FCE was sent to Dr. Ingram, who responded on July 27, 2016, agreeing with the FCE's findings. (Doc. 16-4, at p. 253). A vocational rehabilitation specialist, Kimberly Stauder, conducted a labor market survey and a transferrable skills analysis to determine whether there was gainful work in Plaintiff's geographic area. (Doc. 16-4, at pp. 247-251). Ms. Stauder found several occupations for which Plaintiff was qualified, including Medical Technologist/Teaching Supervisor, Coordinator/Skill Training Program, Utilization Review Coordinator, Director of

Volunteer Services and Director of Nurse's Registry. (*Id.*). On September 19, 2016, Defendant advised Plaintiff that LTD benefits would only be paid through October 4, 2016. She was also advised of her appeal rights. (Doc. 16-4, at pp. 241-245).

## C.   Plaintiff's Appeal

On March 17, 2017, Plaintiff appealed Defendant's decision to discontinue benefits. (Doc. 16-4, at pp. 116-178). Plaintiff claimed that her medication diminished her focus, lessened her executive functions and seriously impacted her ability to perform any occupation. Also, Plaintiff claimed that Defendant did not consider the severe pain and fatigue that affected her ability to work. Plaintiff asserted that she was unable to work continuously and had insufficient bilateral manual dexterity. She argued that Defendant did not take into account the cumulative impact of Plaintiff's multiple conditions, and she challenged whether the FCE evidenced that she was capable of working. Plaintiff argued that the vocational findings were biased and unreliable and that the labor market survey was inappropriate because Plaintiff lived over 100 miles from the location of the survey. (*Id.*).

Defendant acknowledged the appeal on March 23, 2017 and requested that Plaintiff execute medical authorizations. (Doc. 16-4, at p. 111). Plaintiff provided medical records from Dr. Ingram from October 20, 2016 through December 14, 2016, and from Dr. Ledbetter, one of her treating physicians, from August 16, 2016 through November 30, 2016. (Doc. 16-4, at pp. 146-178).

Dr. Ingram examined Plaintiff on October 10, 2016 and reported that Plaintiff claimed muscle pain and weakness but no anxiety, depression, problems sleeping or concentrating. She was assessed with Dercum's disease, diabetes mellitus, migraine headaches and hypertension. Plaintiff also requested a pain management doctor and was referred to Dr. Dole. (Doc. 16-4, at pp. 162-163).

On November 30, 2016, Plaintiff was unable to honor her appointment with Dr. Ledbetter because she could not leave work. (Doc. 16-4, at p. 176). Dr. Ledbetter's office discontinued opiates for Plaintiff, and she responded that she would seek a referral for a new pain management physician. (*Id*.).

On May 30, 2017, Plaintiff's new pain management physician, Dr. Dole, treated her. (Doc. 16-4, at pp. 45-71). His impression was that Plaintiff had lower back pain with spondylosis and radiculopathy, Dercum's disease and chronic pain syndrome. (Doc. 16-4, at pp. 60-61). He prescribed Norco and ordered Plaintiff to return in one month. (*Id*.).

Defendant received voluminous medical records in response to its request, summarized in part in Defendant's motion. Ultimately, it concluded that an independent medical examination was necessary. (Doc. 20-1, at pp. 11-13).

### D. Plaintiff's IME

Dr. Luke Lee, a physician in occupational medicine, examined Plaintiff on September 20, 2017. (Doc. 16-2, at pp. 194-199). Dr. Lee found that Plaintiff showed no signs of discomfort or pain, and the examination of her abdomen, arms and legs was normal, as was the mental examination. (*Id*.). Dr. Lee concluded that Plaintiff

had a medium level work capacity. (*Id.*, at p. 197). Defendant later followed-up with Dr. Lee, inquiring whether his findings correlated with the September 24, 2015 FCE. (Doc. 16-2, at pp. 198-199). Dr. Lee responded in the positive. (*Id.*). He agreed that Plaintiff could function at a sedentary level of work and that there was no medical evidence identifying any cognitive impairment or dysfunction. (*Id.*). There was no indication that Plaintiff was suffering from side effects due to her prescribed medication. (*Id.*).

The results of the IME were shared with Dr. Ingram, Dr. Ledbetter, and Dr. Dole. Dr. Ingram and Dr. Ledbetter agreed with the results of the IME. (Doc. 16-2, at pp. 185, 191). Dr. Dole did not respond.

Defendant requested that vocational rehabilitation specialist, Jennifer Rupnik, review Plaintiff's file. She noted that Plaintiff demonstrated variable effort during the September 2015 FCE and may have been able to do more. (Doc. 28-4). Plaintiff's work history was not consistent with industrial production type work. (*Id.*). Ms. Rupnik's skills analysis and labor market survey found several occupations in the Vidalia area for Plaintiff, including Medical Technologist, Skill Training Coordinator, Director of Nurses' Registry, Job Development Specialist and Insurance Clerk. (*Id.*).

On January 5, 2018, Defendant notified Plaintiff of its conclusion that the medical evidence did not support Plaintiff's claim of her inability to perform the major duties of full-time gainful work. (Doc. 16-2, at pp. 2-13). It then discontinued Plaintiff's benefits, and advised her of her ERISA rights. (*Id.*).

### E. Procedural History

On July 31, 2018, Plaintiff filed suit against Defendant, seeking past and unpaid LTD benefits, pre-judgment interest, attorneys' fees and costs, and an order for future LTD benefits. (Doc. 1, at p. 10). Defendant asserted a counterclaim for attorneys' fees and costs. (Doc. 9, at p. 9). Defendant moves the Court to grant summary judgment in its favor, arguing that it did not abuse its discretion in determining that Plaintiff no longer met the definition of disability under the Plan's "any gainful work" standard, after Defendant approved and paid the maximum benefits for her condition under the Plan's 24-month "own occupation" provision and for a portion of the "any gainful work" plan provision. (Doc. 20–1, at p. 1). Defendant also moves the Court to award it reasonable attorney's fees and costs under 29 U.S.C. § 1132(g). (Doc. 20-1, at p. 2).

Plaintiff filed a cross-motion for summary judgment, arguing that there is no genuine issue of material fact that Plaintiff is disabled according to the terms of the Plan, and Defendant's decision to deny Plaintiff's LTD benefits was "arbitrary and capricious." (Doc. 22–1, at p. 5). Plaintiff contends that Defendant ignored her treating physicians' statements that she was permanently disabled and will never be released to work and ignored her pain and fatigue. (*Id*.). Plaintiff also argues that Defendant had a conflict of interest because it both funded and administered the Plan, which is a factor in determining whether Defendant's decision was an "abuse of discretion." (Doc. 22-1, at pp. 6-7).

Based on the evidence presented and the applicable law, the Court concludes that there is no genuine issue of fact and Defendant is entitled to judgment as a matter of law.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor.  *Coleman v. Houston Independent School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).  However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied.  *Int'l Shortstop, Inc.,* 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations,

unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will be appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III. ANALYSIS

### A. Whether Defendant's Role as Plan Administrator and its Funding of the Benefits Program Created a Conflict of Interest

As an initial matter, the Court must determine whether Defendant's role as plan administrator and its funding of the benefits program created a conflict of interest. *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105 (2008). Plaintiff argues that Defendant operated under a conflict of interest because it determined whether Plaintiff was eligible for benefits and also paid those disability benefits, and in doing so, Defendant abused its discretion. (Doc. 22–1, at pp. 6–7). Defendant admits that it was "operating under a structural conflict of interest" but argues that there is no evidence that "such a conflict" affected its decision or that there was an abuse of discretion. (Doc. 32, at p. 14).

A court must consider a plan administrator's conflict of interest when determining whether an administrator abused its discretion in denying a claimant

13

benefits under ERISA. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). A conflict of interest exists when "a plan administrator both evaluates claims for benefits and pays benefits claims." *Metro. Life Ins. Co.,* 554 U.S. at 112.

In *Metro. Life Ins. Co.,* the United States Supreme Court examined an insurance company's potential conflict of interest when it served as both administrator and insurer of the employer's LTD plan and denied an employee's benefits claim. The Court recognized that a clear conflict of interest occurs in the case of an "employer that both funds the plan and evaluates the claims." *Id.* at 108, 112; *see also Firestone Tire and Rubber Co.,* 489 U.S. at 115 (weighing company's role as administrator and payer of benefits in deciding whether company abused its discretion in denying employee benefits). In *Davis v. Aetna Life Ins. Co.,* the United States Court of Appeals for the Fifth Circuit found that a "structural conflict" of interest existed where Aetna was both the administrator and insurer of the plan. 699 F. App'x 287, 293 (5th Cir. 2017); *see also Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d at 248.

Here, Defendant agrees that a structural conflict of interest existed; however, Defendant argues that there is no evidence that such a conflict affected Defendant's decision on Plaintiff's claim. (Doc. 32, at p. 14). The Court's independent analysis clearly reveals that a structural conflict of interest existed. As such, this Court finds that Defendant had a conflict of interest when it evaluated Plaintiff's disability claim because it both funded the disability program and made benefits eligibility decisions.

As in *Davis*, however, the analysis does not end with the finding of a structural conflict of interests. It is within the Court's discretion to weigh the conflict in assessing the plan administrator's decision to deny benefits. A conflict of interest will be one of many factors a court considers in assessing the legality of a benefits denial decision. *Metro. Life Ins. Co,* at 115–17.

Conflicts of interest should be given more weight where the facts show that it likely affected the benefits decision. Such is the case "where an insurance company administrator has a history of biased claims administration." *Metro. Life Ins. Co.,* at 117. The Fifth Circuit permits a court to weigh a plan administrator's conflict of interest more heavily when the facts surrounding the decision suggest "procedural unreasonableness." *Truitt v. Unum Life Ins. Co. of Amer.,* 729 F.3d 497, 509–10 (5th Cir.2013). A decision is procedurally unreasonable when the method utilized by the plan administrator to make the benefits decision was not based on the uncontroverted medical facts. *Id.* On the other hand, a conflict of interest should be given little weight when an administrator actively attempts to make an accurate decision and reduce bias such as by "walling off claims administrators from those interested in form finances, or ... imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." *Metro. Life Ins. Co.,* at 117.

In *Davis*, the Fifth Circuit did not give significant weight to the insurer's conflict of interest. The court noted that the insurer, Aetna, did not ignore or mischaracterize the recommendations of the treating physicians. Rather, Aetna placed greater weight on other relevant medical evidence that concluded that the

plaintiff was not permanently disabled, which is clearly permissible. *See, e.g.*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (noting that while "[p]lan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," ERISA does not require plan administrators to accord special deference to the opinions of a claimant's treating physicians); *Corry v. Liberty Life Ass. Co. of Boston*, 499 F.3d 389, 401 (5th Cir. 2007) (plan administrator did not abuse its discretion in crediting its consulting physicians over the claimant's treating physicians; this merely constituted a "battle of the experts," where the administrator was "vested with [the] discretion to choose one side over the other").

Also, while a plan administrator cannot pick and choose the evidence it provides to peer reviewers in an effort to obtain a favorable report that supports its desired outcome, Aetna listed the records it considered. *Davis*, at 294-95. It was determined that the materials that Plaintiff believed should have been considered would likely not have had an effect on the opinions of the medical professionals selected by Aetna. *Davis*, at 295.

In sum, the record in *Davis* did not reveal any evidence that would allow the court to draw a reasonable inference that Aetna's structural conflict of interest may have influenced its benefits decision. The Fifth Circuit concluded that Aetna's structural conflict of interest itself need not be accorded "particularly great weight" when considering whether Aetna abused its discretion. *Davis,* at 295.

Additionally, in *Holland,* the Fifth Circuit gave little weight to an employer's conflict of interest where the plan administrator submitted the employee's records to "independent medical professionals" whose compensation did not depend on the outcome of the case. *Holland,* at 249. Also, the employee presented no evidence regarding any financial benefits the employer would have received by denying the claim, how the conflict affected the decision, or any history of the administrator abusing its discretion. *Id.; see also Anderson v. Cytec Indus. Inc.,* 619 F.3d 505, 512 (5th Cir. 2010) (holding that a conflict of interest was an insignificant factor because the employee could produce no evidence establishing that the conflict influenced the benefits decision and the plan administrator consulted with independent experts prior to making the decision).

Here, Plaintiff provided no evidence to show how the conflict affected the benefits decision. (Doc. 22–1). Plaintiff presented no evidence regarding any financial benefits the employer would have received by denying the claim, how the conflict affected the decision, or any history of Defendant abusing its discretion. Plaintiff simply asserts, without pointing to any specific evidence, that because Defendant had a conflict of interest and denied her claim that the conflict affected the decision.

On the other hand, as in *Davis,* Defendant pointed to evidence that it thoroughly reviewed Plaintiff's disability status and consulted with independent medical experts. *Davis*, at 294-95; *Holland,* 576 F.3d at 244. Defendant took active steps to ensure the accuracy of the benefits decision by soliciting another medical opinion, independent of the others, and remaining in communication with Plaintiff.

There is no evidence in the record that shows that Defendant had a history of abusing its discretion or of how the decision to deny benefits specifically affected Defendant's financial "bottom line". Thus, it is unlikely that the conflict affected the Defendant's benefits decision. Therefore, despite Defendant's structural conflict of interest, the Court will not accord Defendant's conflict of interest significant weight when reviewing the benefits decision under the abuse of discretion standard of review.

### B. Whether Defendant Abused its Discretion by Terminating Plaintiff's LTD Benefits

The Court now turns to the merits of the claim. Both parties agree that the Court should review Defendant's denial of Plaintiff's LTD benefits under an "arbitrary and capricious standard" of review because the benefits plan gives the administrator "discretionary authority" to interpret plan terms. (Doc. 32, at p. 1).

A person denied benefits has the right to challenge that denial in federal court. *Metro. Life Ins. Co.*, 544 U.S. at 108. The standard of review for denial of benefits made by an ERISA plan administrator is *de novo* "unless the benefit plan gives the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co.*, 489 U.S. at 115.

Under the Plan, Defendant was the "Claims Fiduciary" with discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims and was vested with authority to "interpret how this Plan is to be administered." (Doc. 20-1, at p. 17, n.136, citing Doc. 16-1, at p. 305). Therefore, an abuse of discretion standard is applied to review Defendant's decision to terminate Plaintiff's LTD benefits. Plaintiff has the burden of proof under ERISA to prove that

the administrator abused its discretion. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005).

The Fifth Circuit outlined a two-step procedure for reviewing an administrator's interpretation and application of an ERISA plan for abuse of discretion. *Id.*, at 269-70. In the first step, the Court must first determine whether the administrator's determination was legally correct. If it was legally correct, there is no abuse of discretion, and the inquiry ends. *Id.*, at 270. If the determination by the administrator was not legally correct, then the Court reviews the decision to determine if there was an abuse of discretion. *Id.* However, where the administrator's determination is a factual determination, as it is here, the Court is not confined to the two-step analysis and may review the determination under an abuse of discretion standard. *Adams v. Metro. Life Ins. Co.*, 549 F.Supp.2d 775, 787 (M.D. La. 2007) (citing *Gellerman v. Jefferson Pilot Fin. Ins. Co.*, 376 F.Supp.2d 724, 733 (S.D. Tex. 2005)).

"If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002). A plan's decision is arbitrary "only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d

211, 215 (5th Cir. 1999). Under the abuse of discretion standard, the Court's review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness – even if on the low end." *Corry*, 499 F.3d at 398. The Court's review is limited to the record before Defendant when it made its decision. *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999)(abrogated on other grounds).

The overarching theme of Plaintiff's challenge to Defendant's decision to decline LTD benefits is that Plaintiff does not agree with Defendant's reliance on the FCE and IME conducted by medical professionals chosen by Defendant. (Doc. 22-1, at pp. 10-19). Rather than rely upon the earlier opinions of Plaintiff's treating physicians from 2010-2013, Defendant relied upon the later FCE by Mr. O'Dell from September 2015 and the IME by Dr. Lee from September 2017. Plaintiff does not take issue with Defendant's procedure in evaluating her claim or in interpreting the Plan. Plaintiff's disagreement is with the fact that Defendant made its decision largely based upon the more recent FCE and IME. Plaintiff's focus is on presumed bias, not procedure. Defendant maintains that its decision to discontinue LTD benefits to Plaintiff was "legally correct" based on "substantial evidence" and was not "arbitrary and capricious" as a matter of law. (Doc. 32, at p. 1). The Court agrees with Defendant.

### 1. Treating Physicians v. Physicians Chosen by Defendant

In support of her position as to why Defendant's decision was arbitrary and capricious, Plaintiff argues that Defendant ignored the opinions of her treating

physicians and relied upon opinions rendered by Defendant's chosen physicians. (Doc. 26, at p. 5; Doc. 22-1, at pp. 10-19). Specifically, she asserts that the findings of Dr. Cavell and Dr. Ingram, and her ongoing complaints of pain, were not fairly considered in conjunction with the opinions of Defendant's doctors. (Doc. 22-1, at pp. 8-10). The Supreme Court and the Fifth Circuit have rejected any proposition that a plan administrator must attach significant weight to a party's treating physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003); *e.g., Becknell v. Long Term Disability Plan for Johnson & Johnson and Affiliated Companies,* 510 F. App'x 317, 320 (5th Cir.2013). Nonetheless, the Supreme Court has also held that plan administrators cannot "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan,* at 834.

In this case, the evidence reveals that Defendant gave credit to *all* medical evidence provided by Plaintiff's treating physicians, considered Plaintiff's "entire medical and claim file, and conducted a "full and fair review of her file". (Doc. 32, at p. 9). This is memorialized in the denial letters under the headings "Decision Summary" and "Summary of Appeal Decision," respectively. (Doc. 16-4, at pp. 241-245; Doc. 16-2, at pp. 2-13). In the initial denial letter, Defendant stated that it requested a Functional Capacity Evaluation from "your physician, Dr. Ingram[,] on June 9, 2015. Dr. Ingram provided the FCE RX on June 16, 2015." (Doc. 16-4, at p. 241). Defendant's letter affirming the denial of disability benefits reflects that it further considered Plaintiff's application for LTD benefits, Plaintiff's entire file,

medical records from Dr. Brown-Manning, medical records from Dr. Ledbetter, medical records from Dr. Cavell, the Notice of Award from the SSA, multiple FCEs that were completed over the years, medical records from nurse practitioner Ashley Olivier, medical records from Dr. Ingram, numerous PCEs that were completed over the years, the recommendations of Defendant's in-house nurse case managers, the FCE completed by Mr. O'Dell, the recommendations of two vocational rehabilitation specialists, medical records from Dr. Dole, and the IME by Dr. Lee. (Doc. 16-2, at pp. 4-12).

Furthermore, "the job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans." *Corry,* 499 F.3d at 401. The Fifth Circuit allows an administrator to rely on the reports of medical professionals even when their opinion conflicts with that of a treating physician, in cases where a medical professional only reviews a claimant's file but does not physically examine him. *Gothard v. Metro. Life Ins. Co.* 491 F.3d 246, 249 (5th Cir. 2007). Therefore, Defendant's decision to deny Plaintiff disability benefits was not *per se* arbitrary and capricious, solely because it afforded more weight to the reports of Defendant's chosen physicians than that of Plaintiff's treating physicians.

But the Court's evaluation does not end there. The Court must further examine whether the other evidence in the record supports Defendant's decision to deny Plaintiff's disability benefits. The Fifth Circuit has held that "the law requires only that substantial evidence support a plan fiduciary's decisions, including those to

deny or to terminate benefits, not that substantial evidence ... exists to support the employee's claim of disability." *Corry,* at 402.

The Fifth Circuit has considered the argument that a plan administrator abused its discretion in denying disability benefits because it relied upon its chosen physicians who were allegedly biased against the plaintiff in their review of her records and in rendering opinions on her condition. *McDonald v. Hartford Life Group Ins. Co.,* 361 F. App'x 599, 601 (5th Cir. 2010). Similar to Plaintiff's arguments here, the plaintiff in *McDonald* alleged that the administrator did not order her to undergo a physical examination, did not consider her "subjective complaints of pain", and that the evidence, in general, did not support the decision. *Id.* at 609–14. The Court dismissed the argument that the physicians were biased because the claimant failed to provide evidence to establish how the physicians received benefits from a diagnosis that included findings that a claimant is able to work or to point to evidence that proved a financial arrangement between the doctors and the plan administrator. *Id.* at 610.

Here, Plaintiff complied with an FCE and IME conducted by physicians chosen by Defendant. Those examinations were in person and included a physical and mental assessment of Plaintiff. Although Plaintiff argues that Mr. O'Dell and Dr. Lee did not consider her complaints of pain or consider the entirety of her medical records, the FCE report and IME report reflect otherwise. (Doc. 16-5, at pp. 5-25; Doc. 16-2, at pp. 194-199). The FCE report contains an entire section addressing Plaintiff's pain. (Doc. 16-5, at pp. 20-21). The IME report provides a summary of

Plaintiff's history and present illness, (Doc. 16-2, at p. 194), and states that Dr. Lee reviewed numerous medical records from July 2009 through December 2016, as well as clinic notes from Dr. Dole in May 2017. (Doc. 16-2, at p. 195). Dr. Lee specifically stated, "The examinee reported a clinical history of diffuse pain. However, there was no pain reported throughout the entire interview or examination process. There was no pain activity or physical discomfort noted. Other than the reported pain as a symptom of her Dercum['s] disease, she had no other symptom complaint." (Doc. 16-2, at p. 196). Plaintiff is correct that Dr. Lee states that he not "a pain physician" and is not "qualified to comment on chronic pain management", (Doc. 16-2, at p. 197); however, this statement was made in response to a specific question asking for a treatment plan for chronic pain – a request that is probably better posed to a pain management physician and having nothing to do with an ability to work.

Further, Plaintiff provided no evidence to establish that the physicians received financial or other benefits from their professional opinions, including the finding that Plaintiff is able to work at a sedentary level, nor has she pointed to any evidence to prove that a financial arrangement existed between Mr. O'Dell, Dr. Lee, and Defendant.

Like the claimant in *Corry,* at 392, Plaintiff received disability benefits for 24 months before the definition of "disability" changed in her case. (Doc. 16-4, at p. 241). Plaintiff received LTD benefits from August 5, 2009 to August 4, 2011, when the determination of "disability" changed. She then continued to qualify for and receive benefits until Defendant terminated them effective October 4, 2016, following the

finding that she was no longer disabled as defined by the Plan. (Doc. 16-4, at pp. 241-42). Like the administrator in *Corry,* Defendant reviewed reports from numerous medical specialists, all of whom actually examined Plaintiff. In addition, medical information from Plaintiff's treating physicians was also considered, along with evidence provided by Plaintiff, including her complaints of pain. The medical professionals who reviewed Plaintiff's medical records and examined her at the request of Defendant formed the opinion that she demonstrated abilities consistent with sedentary work. (Doc. 16-2, at pp. 6-11). Moreover, both of Plaintiff's treating physicians, Dr. Ingram and Dr. Ledbetter, agreed with the IME findings by Dr. Lee. (Doc. 16-2, at p. 11). The vocational reports, which contained available jobs in Plaintiff's geographic area that qualified as "gainful" work under the terms of the Plan, also confirmed that she would be able to perform comparable work. (Doc. 16-2, at pp. 7, 12).

Furthermore, like the extensive investigation conducted by the administrator in *Corry,* Defendant considered all additional evidence that Plaintiff submitted when she appealed the benefits decision, which included Plaintiff's specific complaints that her medications diminished her focus and concentration, lessened her executive functions, and impacted her ability to perform any occupation. Defendant considered Plaintiff's complaints of severe pain and fatigue. The "cumulative impact" of Plaintiff's medical conditions was considered. Updated medical records were requested from Plaintiff's treating physicians and considered on appeal. (Doc. 16-2, at pp. 7-11). Defendant accounted for all of Plaintiff's subjective complaints of pain

made before and during the appeals process. This is evident in Defendant's letter to Plaintiff affirming the termination of her disability benefits. (Doc. 16-2, at pp. 4–12).

> After thoroughly reviewing all of the available information in [the] file, we have determined that the evidence indicates that Ms. Chisholm is capable of full[-]time sedentary work. Although the medical records document Ms. Chisholm's ongoing complaints of pain, she reports that the prescribed medication improves her symptoms. The medical records do not include reports of fatigue. The medical reports also lack evidence that her prescribed medications cause lack of concentration or focus, impairing her ability to be employed. Following his IME, Dr. Lee concluded that Ms. Chisholm is capable of sedentary work. Two of Ms. Chisholm's physicians, Dr. Ingram and Dr. Ledbetter, agreed with the IME findings. Sedentary occupations do exist in Ms. Chisholm's geographic area that are considered gainful according to the plan provisions. Therefore, we have concluded that Ms. Chisholm no longer satisfies the definition of disability and we are unable to consider additional benefits on this claim.

(Doc. 16-2, at p. 12).

Also, Defendant commissioned Dr. Lee to review Plaintiff's medical reports and the evidence as well as to examine Plaintiff to ensure that the administrator made the correct decision. Dr. Lee opined that Plaintiff could perform sedentary work and confirmed this finding with Plaintiff's treating physicians, Dr. Ingram and Dr. Ledbetter. (Doc. 16-2, at p. 11). Although Plaintiff disputes that her treating physicians agreed with Dr. Lee's IME, the record evidence clearly reflects that they, in fact, did so. (Doc. 16-2, at pp. 185, 191).

Plan administrators may not ignore consistent complaints of pain as subjective, but they are not required to give such complaints determinative weight. *See Corry*, 499 F.3d at 400–01. Nor are plan administrators required to explain why

they credited evidence that contradicts a claimant's reported limitations. *See Nord*, 538 U.S. at 834.

Plaintiff argues that Defendant erroneously relied upon medical evidence and opinions from "biased" physicians. Plaintiff argues that Defendant arbitrarily and capriciously denied her disability claim by solely relying on the opinions of doctors who were paid by Defendant to render their opinions on her condition. (Doc. 22-1, at p. 10).

However, this argument is unavailing because Plaintiff provides no evidence in the record to support this assertion. The evidence in the record fails to show any financial arrangement between Defendant and Mr. O'Dell and Dr. Lee that would give them an incentive to give an inaccurate opinion regarding Plaintiff's condition. Furthermore, the record reflects that Plaintiff's treating physicians, Dr. Ingram and Dr. Ledbetter, agreed with Dr. Lee's conclusion that Plaintiff could perform sedentary work. Only after Defendant terminated Plaintiff's disability benefits did Plaintiff argue that her medications challenged her focus and caused fatigue such that she could not perform any work. On appeal, Defendant considered this new argument, requested updated medical records, conducted an IME, and concluded that no evidence supported Plaintiff's unsupported and conclusory complaint. Although Plaintiff points to earlier medical opinions from 2015 from her treating physicians that opined that she could not return to work, this is outweighed by the weight of the more recent medical evidence supporting the plan administrator's findings of

Plaintiff's work capabilities. Regardless, Defendant was within its rights to attach more weight to the most recent recommendations.

The Court's review of the record supports a finding that Defendant's denial of LTD benefits was supported by substantial medical evidence and was not arbitrary and capricious.

### 2. SSA Award

Plaintiff argues that the SSA awarded her disability benefits and found her totally disabled and that Defendant ignored this finding. (Doc. 22-1, at pp. 19-20). Defendant contends that it did, in fact, consider the SSA finding and award. (Doc. 20-1, at p. 20). Defendant specifically points to its acknowledgement of the SSA award in its January 5, 2018, letter; however, Defendant argues that its decision was based on the more recent medical reports and the current evidence that supports Plaintiff's ability to perform gainful work. (Doc. 20-1, at p. 20). Plaintiff argues that the Court should consider the favorable SSA disability determination when assessing the arbitrariness and capriciousness of the benefits decision. (Doc. 22-1, at pp. 19-20).

First, the Court notes that the SSA notice is dated October 29, 2010 and was based on the information available up to that date. (Doc. 16-6, at pp. 154-55). Second, Defendant acknowledged the SSA notice and addressed it in its second denial letter, stating that its decision to deny ongoing LTD benefits "is based on more recent medical reports and current medical evidence that supports [Plaintiff's] ability to perform gainful work". (Doc. 16-2, at p. 12). There is no evidence that the SSA award was "ignored" by Defendant.

A plan administrator's failure to consider a contrary SSA award in its benefits decision can be "an important factor in its own right (because it suggest[s] procedural unreasonableness)" and it "justifie[s] the court in giving more weight to [a] conflict [of interest]." *Metro. Life Ins. Co.,* at 118. The Fifth Circuit has found that an administrator's failure to address an SSA award that conflicted with its benefits decision was unreasonable despite substantial evidence that supported its decision. *Schexnayder,* at 471. However, a contrary SSA disability award does not, in itself, prove that an administrator abused its discretion in rendering its benefits decision. Plaintiff must show that the SSA made its disability determination contrary to the administrator's findings *at the time* Defendant found Plaintiff to be ineligible for disability benefits. *See, e.g., Marrs v. Prudential Ins. Co. of Amer.,* 444 F. App'x 75, 77 (5th Cir.2011). Here, the SSA made its determination in 2010; Defendant made the same determination as the SSA in 2010; Defendant revised its determination in 2016 based on new and more recent medical evidence. This does not equate to the SSA and Defendant making contrary determinations just because the determinations were made at different times based on different information.

Regardless, the SSA findings are not binding on Defendant. While SSA disability findings are " 'relevant and instructive' in a Court's determination of whether a plan administrator acted arbitrarily and capriciously," it is well established that "Social Security determinations are not binding upon a plan administrator." *Adams v. Metro. Life Ins. Co.,* 549 F.Supp.2d 775, 788 (M.D.La.2007) (quoting *Gellerman v. Jefferson Pilot Fin. Ins. Co.,* 376 F.Supp.2d 724, 735

29

(S.D.Tex.2005); *Norton v. Prudential Ins. Co. of Amer .,* 51 F. App'x at *3 ("while an ERISA plan administrator might find a social security disability determination relevant or persuasive, the plan administrator is not bound by the social security determination."); *Williams v. Hartford Life Ins. Co.,* 243 F. App'x 795, 797 n.1 (5th Cir.2007) (plan administrator was "not required to defer to a Social Security ruling.").

Here, the record reflects that Defendant received and considered the SSA award in 2010. Approximately six years later and after new medical evidence had developed that supported a finding that Plaintiff could work at a sedentary level, Defendant denied LTD benefits. The record reflects that Defendant specifically acknowledged the SSA award and confirmed that it considered same in its denial of benefits. Therefore, it is reasonable for the Court to conclude that Defendant was procedurally reasonable in its consideration of the SSA award and did not act arbitrarily and capriciously.

### 3. Summary

Based on the facts, evidence in the record, and applicable law cited herein, the Court finds that Defendant did not arbitrarily and capriciously deny Plaintiff's claim for disability benefits. Substantial evidence in the administrative record supports Defendant's decision terminating Plaintiff's benefits in 2016, and Plaintiff has failed to establish that there was an abuse of discretion. The Defendant, The Guardian Life Insurance Company of America's, Motion for Summary Judgment is **GRANTED**, and the Plaintiff, Wendy Chisholm's, Motion for Summary Judgment is **DENIED**. Plaintiff's claims must be dismissed.

## C.    Attorney's Fees and Costs

The Court, in its discretion, may award reasonable attorney's fees and costs to either party. 29 U.S.C. § 1132(g). The Court considers the following factors in its determination of whether to award fees: (1) the opposing party's bad faith or culpability; (2) the opposing party's ability to pay the fees; (3) the deterrent effect such an award would have on the offending parties; (4) whether the party requesting attorney's fee sought to benefit all participants of an ERISA plan or to resolve a significant legal question involving ERISA itself; and (5) the relative merits of the parties' positions. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

Defendant seeks an award of attorney's fees and costs and argues that Plaintiff filed her lawsuit without considering the "burgeoning jurisprudence" that grants deference to plan administrators. (Doc. 20-1, at 21). Defendant also argues that Plaintiff failed to consider the terms of the Plan, that her treating physicians agreed with the FCE and IME, and failed to provide evidence that she could not return to full-time sedentary work. (*Id.*). Therefore, Defendant concludes, awarding attorney's fees and costs to Defendant would be an "appropriate deterrent". (*Id.*).

Plaintiff also seeks an award of attorney's fees if she is the "prevailing party". (Doc. 22-1, at 27). Plaintiff's request for fees is based upon Federal Rule of Civil Procedure 54(d). (*Id.*).

The Court denies all motions for attorney's fees and costs. First, Plaintiff is not the "prevailing party"; therefore, she is not entitled to an award of attorney's fees

based upon the grounds asserted. Second, the factors considered under 29 U.S.C. § 1132(g) do not weigh in favor of an award to Defendant. Plaintiff's claim for the reinstatement of LTD benefits and her lawsuit are not in bad faith. Plaintiff advanced substantive and non-frivolous arguments in support of her claim. Further, neither Defendant, nor Plaintiff has put forth any evidence of whether Plaintiff is able to pay an award of attorney's fees and costs. Considering that she has not worked since 2009 and that she has not received LTD benefits since 2016, the Court expresses doubt as to Plaintiff's ability to pay fees. Similarly, no party has put forth any evidence or argument as to whether the award of fees would act as a deterrent, who would benefit from such an award, and whether any party lacked merit in their position. Therefore, since none of the factors weigh in favor of an award, Defendant's motion for attorney's fees and costs is denied.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that The Guardian Life Insurance Company of America's **Motion for Summary Judgment (Doc. 20)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Wendy Chisholm's **Motion for Summary Judgment (Doc. 22)** is **DENIED**.

The Guardian Life Insurance Company of America's Motion for Summary Judgment is **GRANTED**.

The Guardian Life Insurance Company of America's motion for an Award of Attorney's Fees and Costs is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims again Defendant are **DISMISSED**.

Baton Rouge, Louisiana, this 30th day of March, 2020.

**BRIAN A. JACKSON, DISTRICT JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**